## Case No. 12,306.

### SANDS v. WARDWELL et al.

[3 Cliff. 277.] [1]

Circuit Court, D. New Hampshire. Oct. Term, 1869.

PATENTS — PRESUMPTIONS — BURDEN OF PROOF — EQUIVALENTS—COMBINATION OF ELEMENTS.

1. Letters-patent are issued upon the adjudication of a public officer, and the presumption is that the adjudication was correct.

2. Letters-patent, if in due form, when introduced in evidence, afford a prima facie presumption that the person named as inventor is the original and first inventor of what is therein described as the improvement. The burden of proof to sustain an opposite conclusion is therefore on the party attacking the patent.

[Cited in Maurice v. Devol, 23 W. Va. 254.]

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

3. Upon the question of infringement the burden of proof is with the complainant.

4. Technical equivalents do not belong to a combination of old elements. Such a combination is only an improvement upon what was before known, and without the new combination the whole would have been the property of the public.

5. When such a combination is patented it is infringed by every subsequent combination of the same elements as those which compose it; and no subsequent combination is substantially different from the patented one, merely because it was in a single device different from one of its elements, provided such substituted device was at the date of the patent a well-known substitute for the omitted one.

6. Subsequent inventors may obtain valid patents for combinations of the same elements as those which compose a prior one, provided the combinations are substantially different, and accomplish new and useful results.

7. No person is to be treated as an infringer who does not use all the elements of a combination, unless the change is merely formal or colorable; and every subsequent combination is only a colorable change when not substantially different from the first.

Letters-patent [No. 38,987] were granted to the complainant [Thomas Sands], June 23, 1864, for an improvement in machines for making machine knitting-needles. On November 15, 1864, the patent was reissued to him, as he alleged, for the same invention, in due form of law for the residue of the original term. [No. 1821.] The present suit was founded upon the reissued letters-patent, and the charge in the bill of complaint was that the respondents [P. S. Wardwell and others], since the issuing of the reissued letters-patent, had manufactured and used machines and machinery embracing mechanism substantially the same in principle, construction, and mode of operation as the patented improvement of the complainant. The principal defences set up in the respective answers of the respondents were as follows: (1) That the reissued letters were fraudulently procured. (2) That the complainant was not the original and first inventor of the improvement. (3) That the invention, or substantial and material parts thereof, claimed by the patentee as new were known to and used by others with the knowledge of the complainant, and with his consent and allowance, more than two years prior to his application for the original patent. (4) Besides these special defences the principal respondent denied that he or either of the other respondents ever made, used, or vended to others to be used, any machine or machines embracing the patented improvement of the complainant. On the contrary, he alleged that he constructed within the period mentioned in the bill of complaint but one machine for the purpose of making knitting-needles, and he averred that he invented and made the same, and that the mechanical devices employed in the said machine were substantially different from those described in the reissued patent of the complainant, and that neither he nor the other respondents had in any manner infringed the complainant's improvement or any part of what was claimed in the said reissued letters-patent.

J. H. George and Foster & Sanborn, for complainant.

J. Marshal and W. H. Y. Hackett, for respondents.

Before CLIFFORD, Circuit Justice, and CLARK, District Judge.

CLIFFORD, Circuit Justice. The proofs introduced by the respondents in support of the allegation of fraud in the procurement of the letters-patent are not sufficient to sustain the charge, and the defence in that behalf is therefore overruled. Further explanations upon the point are unnecessary, as the proofs are quite unsatisfactory and insufficient. Power to grant letters-patent is conferred by an act of congress upon the commissioner of patents. Issued, as such letters-patent are, in pursuance of the adjudication of a public officer, the presumption is that the adjudication was correct. Founded upon that consideration, the settled rule of law is, that letters-patent when introduced in evidence in a suit in equity or at law, if they are in due form, afford a prima facie presumption that the inventor is the original and first inventor of what is therein described as his improvement. Such being the prima facie presumption to be drawn from the letters-patent when introduced in evidence, it follows as a necessary consequence that the burden of proof to establish a contrary conclusion is upon the opposite party. The allegation of the respondents is, that the complainant is not the original and first inventor of the improvement described in the reissued letters-patent. They make the charge and they must prove it, and they have made the attempt, but they have failed to sustain that issue in the pleadings. Extended discussion of a point so clear as that one is in this case would be useless, and consequently we think it sufficient to state our conclusion. Nothing remains to be considered in the case but the question of infringement, and in that issue the burden of proof is upon the complainant. He alleges that the respondents have infringed his reissued letters-patent and prays for an account and an injunction, and unless he proves the charge his bill of complaint should be dismissed, as he is not entitled to any relief.

The statement of the patentee is that his machine is intended to save a great part of the labor heretofore required in making machine knitting-needles by hand, and that it is so constructed that the several operations of carrying forward the steel wire to the block making the eye, stabbing down the wire to the proper shape, and cutting off the wire in a suitable length for a needle, are all performed automatically. His statement also is, that what is termed the eye of the needle is not a perforation through the wire, but a cavity

pressed to receive the point or barb for the purpose specifically set forth in the specification (minute description of the mechanism of the machine and of its mode of operation is given in the specification, which need not be reproduced). Having described the mechanism, the patentee concludes his specification by making four claims; and the complainant insists that the respondents have infringed such parts of his invention as are embraced in the first, second, and fourth claims of the patent. Further reference to the third claim will not be made, as it was conceded at the argument that the complainant had failed to show any infringement in that behalf. Brief notice of the first claim will also show that the complainant is in no better condition in respect to that, as the machine of the respondents contains no such combination as is therein described. Complainant's invention as described in that claim is the burr or equivalent cutter for stabbing that part of the wire which is to form the barb or beak of the needle, in combination with the means or the equivalent thereof for holding the wire by the eye, which has been formed substantially as described, in order that the flattening of the wire by the burr or equivalent cutter may be in proper relation to the eye. Beyond question one of the elements of the combination, by the express words of the claim, is the means described for holding the wire by the eye, and the patentee in that patent is bound by those words. They are a part of the claim, and cannot be rejected as surplusage without meaning. Respondents' machine contains no such means of holding, nor does their machine contain any such element. Infringement therefore of the first claim is not proved.

The second and fourth claims may, to a certain extent, be considered together in respect to the issue of infringement. Before attempting to analyze the second claim, it may be useful to repeat the language, which, in the words of the patentee, is "the combination substantially as described of the means for forming the eye, the means for stabbing that part of the wire which is to form the barb or beak of the needle, and the means for cutting off the wire"; and the patentee in this connection repeats the phrase substantially as described. Stated in other words, the means of forming the eye are those means which advance the wire to the proper position under the punch, the means of holding it there while the punch operates, and the punch and the means which operate it as it performs its described function. Such part of the wire as is designed to form the barb or beak of the needle is subjected to the process of stabbing. In order to accomplish that result in the manner described, there must be a burr or cutter, and the wire must be advanced under the cutter, and there must be means for bringing the cutter down so that it will operate on the wire. Unless the wire is held while the cutter operates, the

machine would be a failure; and it is equally essential that the cutter should be withdrawn at the proper time. The remaining ingredient of that claim is the means of cutting off the wire, which are a fixed shear-cutter, or die, as it is called by some of the witnesses,—and a movable cutter, together with the described means of operating the same. Guided by these explanations, it becomes necessary, in order to determine whether the respondents have infringed this claim, to compare their machine with the invention of the complainant as described in the specification.

Both machines have a similar punch, but the means of operating them in the two machines are unlike in construction, though perhaps are substantially the same in principle and mode of action. Differences are apparent in comparing the respective means employed in the two machines in forming the eye of the needle, but they are not as material as those observable in the respective means employed for stabbing the wire. Unquestionably they have a similar burr or cutter, which is capable of being raised or lowered so as to cut more or less into the wire. They also have means of removing the cutter entirely from the wire, but they are substantially different in the means employed to raise and lower the cutter and govern its operation. The cutter in the complainant's machine is mounted on the arm of a lever, while the other arm of the same lever operates over a cam, and in that way determines the form of the stabbing. Turning to the respondents' machine, it is at once seen that it has no cam, but the wire rests upon an inclined bed, with the part designed for the point of the needle slightly elevated. The cutter is brought down, by the use of a toggle joint, or hinged lever, so as to strike the end of the wire, cutting into it and forming the point of the needle, and as the cutter advances, cutting less and less deeply into the wire by reason of its inclination upon its bed until it is finally withdrawn altogether by the operation of the toggle joint. The machine of the complainant is in this respect quite dissimilar in construction and mode of operation. Their machine has no cam, nor is the device employed in their machine a known substitute for such an instrumentality. These two machines are also quite unlike in respect to the respective means they employ in holding the wire while it is stabbed to form the barb of the needle. In the complainant's machine the punch is forced into the eye of the needle, and remains there holding it down upon the bed, and then at the proper moment moves forward with the wire and the bed, still holding the wire by the eye of the needle while the point of the preceding needle is being stabbed and the barb thereof formed.

The next step in the operation is, that the blank, so called, thus stabbed, is cut off, and the punch returns to the position from which it started to operate, hold, and bring forward

another needle. No such means for holding the wire is found in the machine of the respondents. On the contrary, it has a set of "holding dies which, after the wire is cut off, grasp it firmly and present and hold it for the action of the cutter."

The substance and effect of the fourth claim is for a combination of the bed on which the wire is supported during the operation of stabbing the burr or equivalent cutter for stabbing the wire, the means described for causing the cutter to act upon the wire in the direction of its length, and a cam or equivalent pattern to govern the cutter's motions to and from the wire so as to determine the form of the stabbing. Technical equivalents do not belong to a mere combination of old elements. Such a combination is regarded merely as an improvement upon what was before known, and which, without such new combination, would have belonged to the public. Inventors of such improvements, if their rights are secured by letters patent, may treat all others as infringers who make, use, or vend to others to be used, any and every subsequent combination of those elements not substantially different; and no such subsequent combination is substantially different merely because the person constructing a machine under it employs a different device for one of the elements, provided such device was, at the date of the first patent, a well-known substitute for such omitted element. Other inventors may secure valid patents for subsequent combinations of the same elements, provided combination is substantially different and the invention produces a new and useful result; but no person can be treated as an infringer who does not use all of the elements of the first combination, unless the change is merely formal or colorable, as every subsequent combination is which is not substantially different, and no subsequent change can be regarded as substantially different merely because it drops one of the elements of the one patented and employs in its stead another, which, though different in form, was well known at the date of the patent as a common substitute for the element so dropped.

Applying these principles to the present case, it is quite clear that the proofs do not show that the respondents have infringed upon the second or fourth claim of the complainant's patent. They have no cam, nor have they any equivalent device, nor is the device which they employ a well-known substitute for the one to be found in the complainant's machine. Viewed in any proper light, their machine must be regarded as a substantially different combination, as they do not employ all the elements found in the complainant's machine. No allusion has been made to the evidence tending to show that the principal respondent saw the complainant's machine used, and had opportunity to copy it, as it appears that the machine was then protected by letters-patent, and it is quite

as probable that he examined it to avoid an infringement as to copy the improvement.

Bill of complainant dismissed with costs.